**In re AUTO PARTS CLUB, INC., Debtor and Debtor-in-Possession.**

**Bankruptcy No. 95–06405–A11.**

United States Bankruptcy Court, S.D. California.

Feb. 12, 1996.

James P. Hill, Sullivan, Hill, Lewin, Rez, Engel & Labaz, San Diego, CA, for debtor.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

Cap Libra Ventures ("CLV"), court-appointed real estate consultant to the debtor Auto Parts Club, Inc. ("APC") submits its first and final application for approval of payment of professional fees and costs incurred during this chapter 11 case.

### I. FACTS

CLV was appointed as a real estate consultant for the debtor after making application pursuant to 11 U.S.C. § 327. CLV was to serve as a consultant to renegotiate APC's real estate leases to reduce rents and obtain other landlord concessions necessary to benefit APC in its reorganization efforts. It is unquestioned that CLV did obtain rent reductions and lease concessions for the debtor's benefit.

At some point after CLV's employment was authorized, CLV hired the law firm of Sullivan, Hill, Lewin & Markham ("Sullivan, Hill") to file an emergency motion to allow CLV to participate in an interim compensation and expense reimbursement procedure earlier established by the Court. Sullivan, Hill incurred $2,316.78 in fees and costs in providing this service to CLV.

Further, during the course of lease negotiations, as CLV would successfully renegotiate the debtor's lease agreements, it would call upon the law firm of Bayer, Everett & August ("Bayer, Everett") to draft amendments to those leases. CLV incurred $4,966.10 in fees and costs due Bayer, Everett for this service.

In its final fee application, CLV seeks recovery from the estate for the fees and costs due Bayer, Everett and Sullivan, Hill as a "cost". In addition, CLV requests the Court to award an additional $1,140 in costs as and for the additional fees and costs that Sullivan, Hill incurred in preparing its fee application and attending the hearing on CLV's behalf. Neither Bayer, Everett nor Sullivan, Hill was authorized to be employed as counsel for the estate. Further, nothing in CLV's employment agreement with the debtor suggested it would be hiring legal counsel at the debtor's expense.

### II. ISSUES

1. Are attorneys for a professional employed under 11 U.S.C. § 327 also required to be employed under that section in order to have their fees paid by the estate?

2. Is a non-lawyer professional employed under 11 U.S.C. § 327 authorized to employ counsel to assist it in preparing fee applications and obtaining fees from the estate?

### III. DISCUSSION

#### A. Attorneys Must Be Employed Under 11 U.S.C. § 327 In Order To Have Fees Paid By The Estate.

No matter how one looks at this case Bayer, Everett and Sullivan, Hill are seeking attorney fees from the estate for services rendered to the estate. The fact that such services were performed and such fees are to be paid through CLV makes no practical difference. It is well settled that a professional who performs services for the estate cannot recover fees unless those services have been previously authorized by a court order under 11 U.S.C. § 327(a). *In re Atkins,* 69 F.3d 970, 973 (9th Cir.1995). Bayer, Everett argues that, due to the nature of the services they performed, the firm ought not be considered "professionals" for the purposes of 11 U.S.C. § 327(a).

Bayer, Everett cites a line of cases in which the courts tried to determine whether various applicants were "professionals" under 11 U.S.C. § 327(a). *In re Fretheim,* 102 B.R. 298 (Bankr.D.Conn.1989); *In re Neidig Corp.,* 117 B.R. 625 (Bankr.D.Colo.1990); *In re Madison Management Group, Inc.,* 137 B.R. 275 (Bankr.N.D.Ill.1992). The courts in these cases were faced with requests for fees by a surveyor, a radio management company, and an officer/director, whose employment had not been authorized. These courts had to determine whether pre-approval of their employment was required under 11 U.S.C. § 327(a). Finding no specific mention of surveyor, radio management company, officer and/or director in Section 327(a), they had to decide whether the particular applicant qualified as an "other professional person."

None of these cases dealt with an application for attorneys fees. One court stated, "[w]hile the terms 'attorney,' 'accountant,' 'appraiser,' and 'auctioneer' are not the subjects of much debate, the amorphous term 'professional person' has created some difficulties in application." *In re Neidig Corp.*, 117 B.R. 625, 628 (Bankr.D.Colo.1990). The courts applied various tests to make the determination whether their particular applicant should be considered an "other professional person." For example the court in *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D.Conn.1989), applied a "qualitative" test: "whether an employee is to be given discretion or autonomy in some part of the administration of the debtor's estate."

In this case the Court need not decide which test to apply, because 11 U.S.C. § 327(a) expressly includes "attorneys" as professionals whose employment requires court approval. The authority cited does not support a divergence from a straightforward reading of the statute. Since they are expressly listed in 11 U.S.C. § 327(a), attorneys' employment must be pre-approved in order to receive payment from the estate under 11 U.S.C. § 330. This Court does not recognize a difference between services rendered at the direction of the debtor-in-possession and those rendered at the direction of a professional employed by the debtor-in-possession. Either way the estate bears the expense.

■ In addition to the plain meaning of 11 U.S.C. § 327(a), which this Court is not at liberty to ignore, there are strong policy reasons to require prior approval of employment for all professionals who will ultimately seek to be paid from estate resources. A major purpose of 11 U.S.C. § 327(a) is to allow the Court to control administrative expenses and avoid intervention by unnecessary participants. *In re Haley*, 950 F.2d 588, 590 (9th Cir.1991); *In re Madison Management Group, Inc.*, 137 B.R. at 283. When the trustee or debtor-in-possession thinks the estate needs additional professional help, they justify that request to the court. At that point the court can inquire as to the expenses already incurred and decide whether employment of more professionals is war-

ranted. If this Court were to allow approved professionals to hire other professionals without court approval, such control over administrative costs would be lost.

Furthermore, this Court is not convinced that CLV had authority to employ counsel to be paid by the estate. Not every professional is authorized to hire counsel. Sections 327(a) and 1103 only expressly authorize a trustee, (or debtor-in-possession under 11 U.S.C. § 1107), and a creditors' committee to hire professionals. In *In re Tighe Mercantile, Inc.*, 62 B.R. 995 (Bankr.S.D.Cal.1986), this Court relied on 11 U.S.C. § 105 to allow an examiner to employ counsel; however, that was under unique circumstances not present in this case.

The proper procedure would have been for counsel for APC to perform the legal services for CLV. If, for some reason debtor's counsel was unable to do so, then APC could have sought approval to employ special counsel to draft leases or bring motions on behalf of CLV. This approach was suggested by the court in *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr.C.D.Cal.1991), where the financial advisor for the debtor-in-possession sought to employ Salomon Brothers to provide certain financial services. The court denied the application and suggested that if the debtor wanted to employ Salomon, it should apply to do so. *Id.* at 633.

**B. A Non–Lawyer Professional Employed Under 11 U.S.C. § 327 May Not Employ Counsel To Pursue Payment Of Fees From The Estate Without Prior Approval.**

■ Sullivan, Hill cites *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985) for the proposition that its fees ought to be allowed since they were incurred in connection with the pursuit of fees of CLV. Even assuming CLV could be compensated for fee-related activities, this does not excuse Sullivan, Hill from the requirements of 11 U.S.C. § 327. The argument by Sullivan, Hill is not qualitatively different from that offered by Bayer, Everett.

In *Nucorp* the court held merely that the scope of compensable activities of counsel for the estate included applying for fees. *Id.* at

659. CLV was employed to negotiate and prepare leases. Assuming *Nucorp* applies to non-attorneys,[1] CLV could also be compensated for the expense it incurred in ensuring that it is paid for its services. As discussed above, the fees of Bayer, Everett are disallowed *not* because the services they provided were beyond the scope of activities which CLV was authorized to perform, but rather because they, as attorneys, must be pre-approved under 11 U.S.C. § 327(a). The same analysis applies to Sullivan, Hill. Their fees are denied not because applying for fees was beyond the scope of activities for which CLV may be compensated, but because the firm failed to obtain prior court approval for their employment. CLV should have asked counsel for APC to do the work. If debtor's counsel could not, APC should have applied for authority to employ special counsel to do CLV's fee application.

## IV. CONCLUSION

The request that CLV be awarded as a "cost" the fees incurred to Bayer, Everett & August and Sullivan, Hill, Lewin & Markham is denied in its entirety as the firms were not properly employed under 11 U.S.C. § 327(a).

This Memorandum Decision is in lieu of findings of fact and conclusions of law. Debtor's counsel is directed to prepare an order in accordance with this Memorandum Decision within ten (10) days of the date of entry.

---

**1.** In *In re Specialty Plywood, Inc.,* 160 B.R. 627 (9th Cir. BAP 1993), the BAP suggested that rule of *Nucorp* does not apply to all non-attorney professionals. *Id.* at 632 fn. 6. This Court does not reach that issue in the present case since it holds that no matter what services the attorneys were performing, their employment had to be approved under 11 U.S.C. § 327.