**In re ARTRA GROUP, INC., Debtor.**

**No. 02 B 21522.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 2, 2003.

James A Chatz, Miriam R. Stein, Arnstein & Lehr, Chicago, IL, for Debtor.

Gerald Saltarelli, Butler Rubin Saltarelli & Boyd, Chicago, IL, Special Counsel to the Debtor.

Brian E. Mahoney, Cohn, Baughman & Martin, Chicago, IL, Counsel to Objector Century Indemnity Company.

## MEMORANDUM OPINION

PAMELA S. HOLLIS, Bankruptcy Judge.

This matter comes before the court on Debtor's Application for Entry of Order Authorizing Retention and Employment of Leonard J. Silver and First Risk Management, Inc. as an Expert Witness and For Payment of Retainer. Century Indemnity Company objected to the application on the grounds that Silver has an actual conflict of interest. For the reasons stated below, the court finds that Silver is not a professional person whose retention must be approved under § 327 and denies the application as unnecessary.[1]

## BACKGROUND

In 1975, Artra acquired Synkoloid through a series of transactions, and assumed all of Synkoloid's liabilities arising after 1962. Eventually it became apparent that those liabilities were massive, because Synkoloid allegedly manufactured products that contained asbestos. As of December 31, 2000, Artra was a defendant in pending lawsuits involving over 46,000 plaintiffs asserting claims related to Synkoloid's products. Artra's daily operations have been principally funded by its liability insurance policies.

On March 6, 2001, Artra filed an action in the Circuit Court of Cook County seeking a declaration that certain disputed insurance carriers owed a duty to defend and to indemnify Artra for numerous asbestos related claims. On August 7, 2002, Artra filed a notice of removal of that proceeding to this court. The reference to bankruptcy court has subsequently been withdrawn and the litigation is now pending before Judge Gottschall in the U.S. District Court for the Northern District of Illinois.

Artra retained Gerald G. Saltarelli as special counsel to pursue that litigation. Saltarelli recommended that Artra employ an expert witness to provide testimony in the litigation regarding Artra's entitlement to proceeds of the insurance policies. Artra therefore seeks authority to employ Silver and First Risk to provide testimony relating to: (1) the existence, terms and conditions of the Debtor's "LB" policies issued by Insurance Company of North America; and (2) the issuance and effect of the extension of coverage by American Motorists Insurance Company between April 1 and May 1, 1978. First Risk does not intend to apply to the court for compensation for the professional services it renders.

Century Indemnity objected to the application on the grounds that Silver has a conflict of interest. In addition, Century Indemnity alleged that it will be moving to strike Silver's testimony so retention would be meaningless, and asked that if retention is approved, proceeds from Artra's insurance policies not be used to pay Silver.

---

**1.** The court read its ruling into the record on December 2, 2003, in substantially the same form as this Memorandum Opinion. Since the appeal period runs from the date the opinion is entered on the docket, there is no prejudice in designating this written opinion as having been entered on that day.

## DISCUSSION

According to 11 U.S.C. § 327(a), "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons ...". Artra, as a debtor-in-possession, has all the rights and powers of a trustee pursuant to § 1107, and may employ professional persons under § 327.

The threshold question, however, is whether Silver is a professional person whose employment must be approved. In determining whether a debtor's employment of a person must be approved under § 327, courts have "looked beyond labels ... by looking at the role the party played in the administration of the bankruptcy estate." *Bicoastal Corp. v. Clear (In re Bicoastal Corp.)*, 149 B.R. 216, 218 (Bankr. M.D.Fla.1993). A "professional person" has been interpreted to mean one who plays a central role in the administration of the bankruptcy estate. *See In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr.E.D.Va.1991). Those who provide services to the debtor that would have been necessary even if the petition had not been filed are not considered professional persons, even though they may be members of a professional community. *See In re D'Lites of Am., Inc.*, 108 B.R. 352, 355 (Bankr.N.D.Ga.1989).

"Courts have recognized various duties to be central to the administration of the estate, including assisting in the negotiation of the debtor's plan, assisting in the adjustment of the debtor/creditor relationship, disposing of the assets of the estate and acquiring assets on behalf of the estate." *Elstead v. Nolden (In re That's Entertainment Mktg. Group, Inc.)*, 168 B.R. 226, 230 (N.D.Cal.1994) (citations omitted). In *That's Entertainment*, an accountant was retained solely to testify as an expert witness in intellectual property litigation.

An expert witness is not in the position to formulate strategy or to manage the estate and the liabilities of the estate. While one could argue that the litigation involves an attempt to "acquire assets on behalf of the estate," the expert witness plays only a tangential role in this process, and thus under these circumstances the accountants were not "professionals" within the meaning of § 327.[4]

---

4. Although the litigation itself could be considered central to the administration of the estate, the attorney controls the litigation—the expert witness merely offers evidence in that case. Further, the attorneys are required to be approved by the court under § 327. Such approval is required in part because the position carries with it responsibility and discretion to effectively carry out necessary litigation. These responsibilities include engaging necessary expert witnesses for the litigation. It should also be noted that this discretion is limited by § 330 of the Bankruptcy Code which provides that the bankruptcy court shall review (and may deny) all applications for expenses.

168 B.R. at 230 and n. 4 (citation omitted). *See also In re Napoleon*, 233 B.R. 910, 913 (Bankr.D.N.J.1999) ("Most courts have come to the conclusion that there is no requirement of prior court authorization for retention of an expert witness because an expert is not a 'professional person' within the meaning of § 327.") (footnote omitted with string citation to cases).

Applying this analysis to the retention matter before the court, it appears that Silver is not a professional person under § 327. He is not playing a role in the administration of the estate, but instead providing expert advice for a litigation matter that was commenced long before

this bankruptcy case was filed. Although the outcome of that litigation will certainly impact the resolution of this case and Artra's potential reorganization, Silver's role is not to assist with plan negotiations, creditor relationships, or the acquisition and disposition of assets.

Furthermore, Silver does not appear to have any discretion and autonomy with respect to the administration of the estate. This is in sharp contrast to the entity retained to review and process 250,000 personal injury asbestos claims in *In re ACandS, Inc.*, 297 B.R. 395 (Bankr.D.Del. 2003). In that case, the court found that the entity in question would be making "crucial judgments about the allowability of asbestos claims." *Id.* at 403. Although in that case, as in this one, the main issues were insurance coverage and asbestos claims, Silver's role here is limited to that of an expert witness assisting special counsel.

Consequently, the court need not determine whether Silver's alleged conflict of interest prohibits his employment. Furthermore, Century Indemnity's contention that Silver should not be retained because portions of his testimony will be inadmissible is precisely the sort of detailed involvement in the nuances of litigation that the court seeks to avoid.

> It seems somewhat improper for the Bankruptcy Court to be intimately involved in directing and overseeing litigation which is to be brought before it, or before the District Court. The Trustee and the Attorney for the Trustee are in a better position to evaluate the merits and the possible return to the estate. It therefore appears that this is an area where the Court should maintain some discrete distance if there are not countervailing factors requiring the Court's intrusion. In this way, the Court may

avoid the appearance of impropriety, partiality or influence.

*In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 691, 693 (Bankr.N.D.Ohio 1987).

■ Finally, Century Indemnity's request that proceeds from insurance policies not be used to pay Silver is premature. Special counsel will pay the retainer and any fees and will presumably seek reimbursement of those expenditures in its fee application. At that time the court can determine whether that expense was actual and necessary. The source of funds for such reimbursement is not a question properly before the court at this time.

## CONCLUSION

For the reasons stated above, the application is denied. Silver's employment need not be approved under § 327 because he is not a professional person pursuant to that section. If special counsel in its judgment hires Silver as an expert witness, it may seek reimbursement of that expense through application to this court.